PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| RALPH ARNOLD, | ) |
|     Plaintiff, | ) CASE NO. 4:19cv310 |
| v. | ) JUDGE BENITA Y. PEARSON |
| RICHARD BOWEN, *et al.*, | ) |
|     Defendants. | ) **MEMORANDUM OF OPINION AND ORDER** [Resolving ECF No. 3] |

This is a *pro se* action filed by Plaintiff Ralph Arnold, an inmate at the Ohio State Penitentiary ("OSP"), concerning his disciplinary confinement at OSP.[1]

Plaintiff initiated this 42 U.S.C. § 1983 action on February 11, 2019. On March 22, 2019, he filed a Motion to File an Amended Complaint "to correct deficiencies" in his original pleading. ECF No. 3. The Amended Complaint names OSP Warden Richard Bowen, Deputy Warden Davis, Rules Infraction Board ("RIB") Chairperson Condie Bright, and Assistant Warden Thomas Horton as Defendants. Plaintiff's Motion to File the Amended Complaint (ECF No. 3) is granted, and for the reasons stated below, his action is dismissed.

## I. Background

The following background is derived from the Plaintiff's original Complaint (ECF No. 1) and Amended Complaint (ECF No. 3-1). Plaintiff is a Level E inmate, OSP's most restrictive

---

[1] The Plaintiff filed a previous, similar action in this Court in 2015. The Court dismissed the action pursuant to 28 U.S.C. § 1915A. *Arnold v. Forshey, et al.*, No. 4:15cv345 (N.D. Ohio July 29, 2015).

(4:19cv310)

security classification reserved for inmates who constitute the greatest threat to the safety and security of the community. ECF No. 3-1 at PageID#: 31-32, 38. He has been placed in "T.P.U.," or "the hole," on multiple occasions in connection with encounters he has had with Corrections Officers during his confinement at OSP. ECF. No. 1 at PageID#: 3-4.

In this case, Plaintiff alleges that on December 23, 2018, after being "let out of the 'hole' for the final time," he "devised a plan to act as if [he] would stab said COs," contending he "knew this was the only way to get out of the block with the COs." *Id.* at PageID#: 4. As a result of this conduct, Plaintiff was not transferred but disciplined. He was placed in "RND in the basement of the prison," and "per Deputy Warden Davis's orders," placed in a cell where the lights stayed on all day, and he was not allowed shoes, hygiene products, access to mail, kites, or other privileges. *Id.* Several days later, on December 26, 2018, Warden Bowen personally served Plaintiff with "Conditions of Confinement" paperwork under Policy 55-SPC-02, setting forth Restrictive Housing conditions to which he was subjected, subject to monthly review. *Id.* at PageID#: 4-5; ECF No. 3-1 at PageID#: 32, 36. And on December 31, 2018, after a hearing, the RIB found him guilty of multiple Rule violations in connection with his conduct and imposed discipline. *Id.* at PageID#: 48. The Disposition of the RIB, signed by RIB Chair Bright, states that the Plaintiff refused to be seen at the RIB hearing concerning the charges against him, and that video evidence clearly showed that he attempted to stab two officers with a weapon, refused to drop the weapon when commanded to do so, and issued threats to the staff. For this conduct, the RIB sanctioned Plaintiff with "28 days T.P.U." with credit for time served and 30 and 90 days of other privilege restrictions. *Id.* Defendant Horton affirmed the RIB's decision on appeal.

2

(4:19cv310)

*Id.* at PageID#: 53.

Seeking compensation and to be transferred to another prison, Plaintiff purports to allege violations of his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments, as well as retaliation in violation of the First Amendment. He contends the discipline imposed on him by the RIB and the conditions of confinement ordered by Warden Bowen contradict prison policies and subject him to cruel and unusual punishment and "double jeopardy." *Id.* at PageID#: 33. Plaintiff also protests that Davis ordered security measures against him that "defy logic." *Id.* He complains that, from December 23, 2018, to February 1, 2019, Davis ordered that Plaintiff's cell be searched four days a week, and that, beginning on February 1, 2019, Davis ordered that he be subjected to four-days-a-week strip searches. Plaintiff contends Davis ordered the strip searches in retaliation for this lawsuit. *Id.*

## II. Standard of Review

Although *pro se* pleadings are liberally construed, *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), the "lenient treatment generally accorded to *pro se* litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Federal district courts are expressly required, under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to screen and dismiss before service any *in forma pauperis* civil action, and any complaint in which a prisoner seeks redress from governmental officers and employees, that the court determines is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. To survive a dismissal for failure to state a claim, a *pro se* "'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"

3

(4:19cv310)

*Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) governs dismissals under §§ 1915(e)(2)(B) and 1915A). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### III. Discussion

On review, the Court concludes that this action must be dismissed because Plaintiff's allegations are insufficient to demonstrate any plausible constitutional claim.

#### A. Fourteenth Amendment Claim

Plaintiff has alleged no plausible due process claim under the Fourteenth Amendment. "Prisoners have narrower liberty interests than other citizens as lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights." *Grinter v. Knight*, 532 F.3d 567, 573 (6th Cir. 2008) (quoting *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (internal quotation marks omitted)). And "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *see also Sandin*, 515 U.S. at 480 (the Due Process Clause of the Fourteenth Amendment "confers no liberty interest in freedom from state action taken within the sentence imposed").

The Supreme Court has held that a prisoner can claim a protected liberty interest triggering constitutional due process protection in two circumstances: (1) when the actions of prison officials "affect the duration" of the term of the prisoner's sentence, *Sandin*, 515 U.S. at

4

(4:19cv310)

487; and (2) when the restraints imposed by the state amount to an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. In *Sandin*, the Supreme Court held that a 30-day period of confinement in disciplinary segregation for 23 hours and 10 minutes per day "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest" for an inmate serving an indeterminate sentence of 30 years to life. *Id.* at 486. "Generally, unless placement in disciplinary confinement is accompanied by a withdrawal of good time credits or is for a significant period of time that presents an unusual hardship on the inmate," no constitutionally-protected due process interest is implicated. *Ford v. Harvey*, 106 F. App'x 397, 399 (6th Cir. 2004) (state prisoner's placement in disciplinary confinement and increased security classification status did not trigger constitutional due process protections).

Here, Plaintiff complains about discipline dispensed as a consequence of his attempt to stab two corrections officers and the threats he issued to those officers. The discipline amounts to segregated confinement and other temporary privilege restrictions, subject to monthly review. Plaintiff's disciplinary confinement does not involve a loss of good time credits and does not amount to an "atypical and significant hardship" in relation to the ordinary incidents of prison life. Rather, the discipline to which Plaintiff was subjected falls within the expected adverse consequences of incarceration. *See, e.g.*, *Williams v. Lindamood*, 526 F. App'x 559, 563 (6th Cir. 2013) (incarceration in a disciplinary unit pursuant to a determination of a Rules Infraction Board did not constitute an "atypical and significant" hardship on an inmate in the context of prison life).

5

(4:19cv310)

Even assuming Plaintiff's allegations implicate a protected liberty interest, a court's ability to review prison discipline is limited. A federal court must uphold a prison disciplinary board's determination as consistent with due process as long as a prisoner has received basic procedural protections and the prison disciplinary committee's findings are supported by "some evidence" in the record. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). Although Plaintiff contests the propriety of the discipline imposed on him, his allegations do not plausibly suggest he was denied requisite basic procedural protections, and it is apparent on the face of his pleadings that "some evidence" supported the disciplinary findings against him. ECF No. 3-1 at PageID#: 48. Video evidence shows Plaintiff threatening and attempting to stab two corrections officers and refusing to drop his weapon when instructed, and he refused to attend the disciplinary hearing at which his rules infractions were adjudicated. *Id.*

Accordingly, Plaintiff fails to allege any plausible Fourteenth Amendment due process claim.

**B. Fourth, Fifth, and Eighth Amendment Claims**

Plaintiff also fails to allege any plausible claim for "cruel and unusual punishment" under the Eighth Amendment. To make out an Eighth Amendment claim, an inmate must show that he has been deprived "of the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Alleging that prison conditions "are restrictive and even harsh" is insufficient to state a claim because such conditions "are part of the penalty that criminal offenders pay for their offenses against society." *Id.*; *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("Because routine discomfort is part of the penalty that criminal offenders pay for their

6

(4:19cv310)

offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." (internal quotation marks and citations omitted)).

Plaintiff's allegations regarding his prison discipline are insufficient to suggest a violation of the Eighth Amendment. The Sixth Circuit has routinely held that the Eighth Amendment's prohibition against cruel and unusual punishment does not insulate an inmate from unpleasant and restrictive conditions imposed in disciplinary confinement. Placement in disciplinary segregation, as Plaintiff alleges here, has repeatedly been found to be a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society. *See, e.g., Harden-Bey v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008); *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (citing *Hudson*, 503 U.S. at 9) (holding that plaintiff's allegations, which did not suggest his detention was more severe than the typical conditions of segregation, were insufficient to support an Eighth Amendment claim).

Plaintiff also fails to allege any plausible claims under the Fourth and Fifth Amendments. "[P]risoners have no legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). And the Due Process Clause of the Fifth Amendment "circumscribes only actions of the federal government." *Fowler v. Campbell*, 2007 WL 1035007, at *2 (W.D. Ky. Mar. 30, 2007). Likewise, Plaintiff does not allege a plausible claim of "double jeopardy" under the Fifth Amendment. The Double Jeopardy Clause applies only to criminal convictions and does not "inhibit prison discipline." *See United States v. Simpson*, 546 F.3d 394, 398 (6th Cir.

(4:19cv310)

2008).

### C. First Amendment Retaliation Claim

Finally, to the extent Plaintiff purports to allege a claim of First Amendment retaliation, his allegations are insufficient to state a claim. To make out a claim of constitutional retaliation, a Plaintiff must plead (1) that he engaged in constitutionally protected activity, (2) that he suffered an adverse action, and (3) that the adverse action was motivated, at least in part, by the plaintiff's involvement in the protected activity. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Plaintiff's filing this lawsuit, of course, is a constitutionally protected activity. But Plaintiff can satisfy neither of the latter two requirements.

For one thing, the pleadings fail to demonstrate that the alleged strip searches were an "adverse action" for purposes of constitutional retaliation. Given the circumstances of Plaintiff's detention, it appears unlikely that strip searches were anything out of the ordinary. Plaintiff attaches to his Amended Complaint the RIB's conclusion, based on video evidence, that Plaintiff had attempted to stab two officers with a weapon and issued direct threats to the staff. ECF No. 3-1 at PageID#: 48. Nowhere in his pleadings does Plaintiff deny his violent, threatening behavior toward officers, nor does he deny that, at the time of the alleged strip searches, he was in disciplinary segregation. *Id.* Plaintiff's unexplained suggestion that strip searches are *per se* an "adverse action" for purposes of his constitutional retaliation claim is not persuasive because he does not account for the circumstances surrounding those strip searches. *See Leek v. Miller*, 698 F. App'x 922, 926 (10th Cir. 2017) (strip searches were not "adverse action" for purposes of retaliation claim in part because the plaintiff "made no allegation that the

8

(4:19cv310)

strip searches and the searches of his personal property were unusual" under the circumstances).

Plaintiff also fails to meet the third requirement of a constitutional retaliation claim. The causation element requires the plaintiff to plead a subjective retaliatory motive on the part of the defendant. *See Thaddeus-X*, 175 F.3d at 399. Plaintiff contends he knew Deputy Warden Davis's strip-search order, beginning on February 1, 2019, was retaliatory "because when [he] asked Lt. Edmunds" why he was being strip searched, Lieutenant Edmunds responded, "blame it on your lawsuit." ECF No. 3-1 at PageID#: 33. But Plaintiff alleges no facts suggesting that Defendant Davis himself (as opposed to Lieutenant Edmunds) had knowledge of Plaintiff's plans to file this lawsuit (later filed on Feb. 11, 2019) when he allegedly ordered the strip searches. And Lieutenant Edmunds' comment, if it was made, is insufficient by itself to demonstrate that the adverse action allegedly taken by Defendant Davis was causally connected to Plaintiff's filing of the lawsuit. *See. e.g., Iqbal*, 556 U.S. at 678.

## IV. Conclusion

For all of the foregoing reasons, the Plaintiff's action is dismissed in accordance with 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. The Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

  June 18, 2019                                                  */s/ Benita Y. Pearson*
Date                                                              Benita Y. Pearson
                                                                     United States District Judge